```
USDS SDNY
...
...ALLY F....
DOC #: _____
DATE FILED: 2-10-12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
WOODLAND DESIGNS PLC,

                              Plaintiff,                  11 Civ. 4708 (PKC)

           -against-

                                                        MEMORANDUM
                                                        AND ORDER

NAUTICA APPAREL, INC.

                              Defendant.
------------------------------------------------------------x

CASTEL, District Judge:

        Plaintiff Woodland Designs PLC ("Woodland") brings this action seeking a declaratory judgment that, among other things, defendant Nautica Apparel Inc.'s ("Nautica's") termination of the licensing contract between Woodland and Nautica is improper and that the contract remains in effect. Nautica now moves for summary judgment on its Second Counterclaim, which is a counterclaim for a declaratory judgment that its termination of the contract was lawful and proper.[1] For reasons explained, Nautica's motion is granted.

## BACKGROUND

        For the purposes of the motion, all undisputed facts and Woodland's version of any disputed facts are accepted as true. All reasonable inferences are drawn in favor of Woodland, as the non-movant.

---

[1] At the initial conference, there was an extended discussion with the Court regarding the propriety of defendant Nautica moving for partial summary judgment prior to the close of the fact discovery period. Most often, such a motion ought to await the close of discovery. Exercising the authority granted to a district judge in Rule 16(c)(2)(E), Fed. R. Civ. P., the Court approved the timing of defendant's proposed motion. (Order, Sept. 19, 2011, ECF No. 11.)

By agreement executed February 1, 2011 with an effective date of October 1, 2010 (the "License Agreement") (Canavan Decl. Ex. A., ECF No. 18), Nautica granted a license to Woodland to use certain marks owned by Nautica in the marketing, distribution and sale of certain apparel and other products. (Def. R.56.1 ¶3, ECF No. 27; Pl.R.56.1 Resp. ¶3, ECF No. 26.) The License Agreement describes in detail the obligations of the licensee. It also sets forth at length the obligations of the parties and the right to terminate the License Agreement based upon certain breaches, some of which are curable and others of which are not. (Id. Art. 16.) In particular, paragraph 16.2(c) of the License Agreement greement provides that:

> In the event that [Woodland] . . . files a petition in bankruptcy . . . or if a petition in bankruptcy is filed against it or it becomes insolvent or . . . [Woodland] fails to pay its bills as they become due, or defaults in respect of any credit facility, loan, evidence of material indebtedness . . . or liability for any money borrowed by [Woodland] or financial obligations incurred on behalf of [Woodland], then [Nautica] shall have the option to terminate this Agreement immediately upon written notice to [Woodland].

(Id. ¶ 16.2(c).)

On August 17, 2011, Nautica transmitted a notice of termination setting forth seven grounds for termination, including that Woodland had breached paragraph 16.2(c).[2] (Whitney Ltr., Aug. 17, 2011, Whitney Decl. Ex. D, ECF No. 15.) Nautica asserted, and Woodland does not dispute, that Societe Generale Bank—Cyprus Ltd. (the "Bank") filed a dissolution petition against Woodland on the basis of Woodland's having defaulted on a loan account and overdraft account by an amount in excess of €1.75 million plus accrued interest. (Id. at 1; Def. R.56.1 ¶14; Pl. R.56.1 ¶ 14.)

---

[2] Nautica transmitted two notices of termination to Woodland based on alleged breaches of Woodland's contractual obligations. The first notice, dated June 13, 2011, was based upon a purported failure to pay $392,996.27 to certain designated suppliers, as well as a failure to pay an additional agency fee. (Whitney Ltr., June 13, 2011, Whitney Decl. Ex. A.) Following the June 13 Notice, Woodland commenced this action, on July 8, 2011. (Compl., ECF No. 1.) Thereafter, on August 17, 2011, Nautica transmitted a second notice of termination, the August 17 Notice discussed above.

Woodland's August 26, 2011 letter response to Nautica did not deny the facts relating to the filing of the Bank's petition but argued that Nautica had been aware of Woodland's financial condition. (Georghiou Ltr., Aug. 26, 2011, Whitney Decl. Ex. E, at 1-2.) Woodland asserted that its default "cannot possibly justify termination of the License Agreement unless and until Ridenco's reorganization plan is either rejected by the Greek Court, or, if approved, not fulfilled." (Id at 2.) Ridenco is a corporate affiliate of Woodland that had filed a bankruptcy petition sometime prior to execution of the License Agreement. (See id. at 1-2.)

In the action before this Court, Woodland takes much the same position. Woodland admits "that [the Bank] has filed a dissolution petition against Woodland which has experiencing [sic] financial difficulties due to the inability of its affiliate, Ridenco Commercial S.A., to pay for the Licensed Inventory purchased from Woodland." (Ans. to Countercls. ¶ 27, ECF No. 27.) In fact, Woodland formally admits to paragraph 66 of Nautica's counterclaim, which asserts that "[a]cordingly, as a result of the Cypriot Bank Petition and because of Woodland's default in respect to a credit facility or loan, Nautica has the option to immediately terminate the Agreement upon written notice to Woodland." (Id.; Countercl. ¶ 66, ECF No. 6.) Woodland renews its argument that the language of the License Agreement should be interpreted in light of the purported understanding, not explicit in the License Agreement, that Nautica would not terminate the contract due to breaches flowing from Woodland's "seriously strained financial situation." (Pl. Mem. Opp. Summ. J. 21, ECF No. 22.)

## DISCUSSION

The language of the License Agreement is governed by New York Law. (License Agreement ¶ 21.3.) Under New York law, "[a] written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of

the language chosen by the contracting parties." Brad H. v. City of New York, 17 N.Y.3d 180, 185 (2011). Whether contract language is ambiguous "is determined within the four corners of the document; it cannot be created by extrinsic evidence that the parties intended a meaning different than that expressed in the agreement." Id. at 186.

Here, the language in the License Agreement giving rise to the right to terminate, in the context of the agreement as a whole, is unambiguous. Furthermore, the License Agreement is a fully integrated agreement with a merger clause (License Agreement ¶ 21.13) that prohibits waivers except in a signed writing (id. at ¶ 21.7). Therefore, the unambiguous termination provision within this complete writing must be enforced according to its language; and that language entitled Nautica to terminate the License Agreement if and when "a petition in bankruptcy [was] filed against [Woodland]" or Woodland "default[ed] in respect of any credit facility, loan, [or] evidence of material indebtedness." (Id. at ¶ 16.2(c).) Because Woodland admits that the Bank filed a notice of dissolution against it for Woodland's default on a loan account and overdraft account, Nautica was entitled to terminate the contract upon written notice. Nautica properly exercised that option by serving the August 17 Notice.

Woodland invokes Rule 56(d), Fed. R. Civ. P. (the successor to Rule 56(f)), and argues that it should be granted the opportunity to conduct discovery on whether Nautica had an intention of fully performing when it entered into the License Agreement. The allegation, made upon information and belief in its answering memorandum (Pl. Mem. Opp. Summ. J. 7-8), is insufficient to defeat summary judgment. "A court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered." Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994).

4

## CONCLUSION

Nautica's motion for summary judgment on its Second Counterclaim (ECF No. 12) is GRANTED insofar as the Court now declares that the License Agreement has been properly terminated. The Court need not reach any other ground asserted in the motion.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
February 10, 2012